**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MARCUS LITTERER,**

**Plaintiff,**

**v.** **Case No: 6:14-cv-268-Orl-22TBS**

**CHURCH STREET VENTURES, INC.,**

**Defendant.**

---

**KRISTINA MEJIAS,**

**Plaintiff,**

**v.** **Case No: 6:14-cv-269-Orl-22TBS**

**CHURCH STREET VENTURES, INC.,**

**Defendant.**

---

# ORDER

## I. INTRODUCTION

Previously, the Court determined that a question exists regarding whether this Court has subject matter jurisdiction over these cases asserting state law claims under Florida's minimum wage laws, i.e., Article X, Section 24(c) of the Florida Constitution and Section § 448.110 of the Florida Statutes. Specifically, the issue is whether these cases present a substantial federal question based on the particular allegations in these complaints and the relationship between Florida's minimum wage laws and the federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. Accordingly, on March 24, 2014, the Court directed the parties to file legal memoranda addressing subject matter jurisdiction in the specific context presented by these cases.

Defendant responded by filing memoranda arguing that the cases present substantial, disputed issues of federal law, with the result that this Court does have subject matter jurisdiction over them. For their part, Plaintiffs did not file legal memoranda; instead, they filed notices stating that they did not oppose the Defendant's position.

Because "[a] federal court must always satisfy itself of its own jurisdiction," *MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, 720 F.3d 833, 841 (11th Cir. 2013), this Court is not bound by the parties' agreement that jurisdiction exists. After examining the matter for itself, the Court determines that it does not, in fact, possess subject matter jurisdiction over these cases. Accordingly, they will be remanded to state court.

## II. BACKGROUND

Plaintiff Litterer was employed by the Defendant as a restaurant server. Litterer's Complaint asserts state law claims pursuant to Florida's minimum wage laws; his Complaint contains no federal causes of action. Litterer claims the Defendant failed to pay him minimum wage (Count I), refused to pay him for all hours worked (Count II), and required him to participate in an invalid tip-pooling arrangement (Count III). (Doc. No. 3.)[1] More specifically, Litterer contends the Defendant could not validly apply tip credit to him because he spent more than 20% of his shifts on non-tipped work. (*Id.*, ¶¶ 10-17, 27-30.) He also claims the Defendant made him work "off the clock" and did not pay him for that work. (*Id.*, ¶¶ 18-20, 36-44.) Finally, he alleges that the Defendant unlawfully required him to participate with non-tipped employees in a tip-pooling arrangement. (*Id.*, ¶¶ 21-22, 49-57.)

[1] Unless otherwise noted, all references herein to court filings pertain to documents filed in the Litterer case.

Litterer's Complaint notes that Florida's minimum wage laws expressly incorporate provisions of the federal FLSA. (*Id.*, ¶ 29.)[2] The Complaint contains other references to the FLSA, including allegations that Litterer is a covered employee under the Florida Minimum Wage Act (FMWA) through its incorporation of the FLSA into Florida law, *(id.*, ¶ 4); the Defendant employed Litterer as a tipped employee as defined by the FLSA, (*id.*, ¶ 10); the FLSA excludes employers from applying tip credit to employees whose non-tipped duties exceed 20% during a work shift, (*id.*, ¶ 16); and requiring Litterer to participate in a tip-pooling arrangement with non-tipped employees invalidated the Defendant's entitlement to tip credit pursuant to the FLSA, (*id.*, ¶52).

Plaintiff Mejias' Complaint contains similar allegations, except that Mejias only claims failure to pay minimum wage; she does not assert "off the clock" or "tip pooling" claims. Like Litterer, Mejias contends the Defendant could not validly apply tip credit to her because she spent more than 20% of her shifts on non-tipped work. Mejias' Complaint, like Litterer's, is replete with references to the FLSA.

Relying on the allegations in the Complaints regarding the FLSA, the Defendant removed both cases on the basis of federal question jurisdiction. Defendant contended that because the Florida Constitution incorporates the coverage requirements of the FLSA, a determination of Florida coverage requirements would necessarily require an interpretation of the FLSA and its implementing regulations. Additionally, Defendant asserted that whether Plaintiffs are covered employees and tipped employees would require interpretation of the FLSA. Defendant also maintained that whether the Defendant was excluded from applying a tip credit to the Plaintiffs

---

[2] Litterer's Complaint contains two paragraphs numbered 29. Both paragraphs reference the FLSA.

would require interpretation of the FLSA. Finally, specific to Plaintiff Litterer, Defendant asserted that whether it could properly apply tip credit to Litterer in light of Litterer's allegations regarding the tip pooling arrangement would also require an interpretation of the FLSA. Accordingly, Defendant maintained that Plaintiffs' Complaints presented federal questions.

## III. ANALYSIS

Defendant's court-ordered legal memorandum[3] relies principally on the Supreme Court's three-decades-old decision in *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1 (1983). *Franchise Tax Board* stated that where, as here, state law creates a party's cause of action, "its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." 463 U.S. at 13. However, invoking *Franchise Tax Board* merely scratches the surface of this complex area of the law. In fact, the Supreme Court has decided several "substantial federal question" cases since *Franchise Tax Board*, one as recently as last year, and these decisions make increasingly clear that the doctrine is quite narrow and must be applied sparingly. *See Gunn v. Minton*, -- U.S. --, 133 S.Ct. 1059 (2013); *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).[4]

---

[3] Defendant filed two legal memoranda, one in each case. For present purposes, the memoranda are indistinguishable, so the Court will refer to them in the singular.

[4] In one of the cases cited above, *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), the Supreme Court found that a substantial federal question did exist, holding that "the national interest in providing a federal forum for federal tax litigation is sufficiently substantial to support the exercise of federal-question jurisdiction over the disputed issue on removal, which would not distort any division of labor between the state and federal courts, provided or assumed by Congress." 545 U.S. at 310. Nevertheless, *Grable* and its successors, *Gunn v. Minton*, -- U.S. --, 133 S.Ct. 1059 (2013), and *Empire Healthchoice*

Further, Eleventh Circuit decisions following these Supreme Court precedents illustrate just how narrowly the substantial federal question doctrine must be applied. *See MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, 720 F.3d 833 (11th Cir. 2013); *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290 (11th Cir. 2008); *Blue Cross Blue Shield Health Care Plan of Ga., Inc. v. Gunter*, 541 F.3d 1320 (11th Cir. 2008).

As stated last year in *Gunn*, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." 133 S.Ct. at 1066. However, only a "slim category" of cases will qualify. *Id.* at 1065; *see Empire Healthchoice*, 547 U.S. at 699 (describing the category as "special and small"). For present analytical purposes, this Court will assume that the first two factors are satisfied and will proceed to address the last two.

The substantiality inquiry does not focus on the importance of the issue to the parties in the particular case before the Court; it "looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 133 S.Ct. at 1066. As the Eleventh Circuit has noted, the Supreme Court identified three factors relevant to the substantiality analysis. "First, a pure question of law is more likely to be a substantial federal question." *MDS (Canada)*, 720 F.3d at 842. "Second, a question that will control many other cases is more likely to be a substantial federal question." *Id.* "Third, a question that the government has a strong interest in litigating in a federal forum is more likely to be a substantial federal question." *Id.* In contrast, an issue that is "heavily fact-bound

---

*Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), make abundantly clear that this result represents the narrow exception to the rule. In any event, the cases at bar bear no resemblance to the unique circumstances presented in *Grable*.

and situation-specific" is unlikely to present a substantial federal question. *Id*. (internal quotations omitted).

This case fails all three tests articulated above. First, whether these particular Plaintiffs are covered by the FLSA, whether the tip credit was properly applied to them, and whether they are owed wages under the FLSA are not pure questions of law; instead, these inquiries are intensely case-specific. Thus, as in *MDS (Canada)*, "[w]e have a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law." 720 F.3d at 842. Second, resolution of these issues is unlikely to have any application beyond the boundaries of these two cases, much less "control many other cases." *Id*. Finally, there is no indication that the federal government has a strong interest in litigating this particular dispute between these particular parties in a federal forum. In fact, the federal government's interest here is weak. The government is much less interested in the individualized application of federal labor law to these particular parties than it would be to questions of broader application that might affect a federal agency's litigation posture in future cases. *See id*. ("[T]he government interest in any particular fact-bound question of patent infringement is less significant than the government interest in a question of law that will impact the ability of the government to raise revenue in a number of future cases."). Nor does this case involve any question about whether a federal agency complied with a federal statute. *Id.* at 843; s*ee also Craddock v. Adon Network, Inc.*, No. 2:10-cv-01401, 2011 WL 1601331 at *5 (S.D. W. Va. Apr. 27, 2011) ("This is a lawsuit between private parties, the resolution of which simply *may* turn on interpretation of a federal law."). Finally, there is no indication that resolution of the federal issue involved herein will dictate or constrain any future course of action by the federal government. *See MDS (Canada)*, 720 F.3d at 842-43. "Nor will the resolution of the [FLSA] coverage issue[s] in [these

cases] have any *res judicata* effect on the federal government." *Craddock*, 2011 WL 1601331 at *6. In sum, these cases present no substantial federal question, i.e., one that is significant to the federal system as a whole.

Even if the Defendant could surmount the substantiality hurdle, subject matter jurisdiction would still fail on the fourth criterion, i.e., disruption of the balance of federal and state judicial responsibilities. At the outset, state courts are perfectly capable of interpreting and applying federal law; they "correctly apply federal law every day." *Blue Cross Blue Shield Health Care Plan of Ga., Inc. v. Gunter*, 541 F.3d 1320, 1323 (11th Cir. 2008); *see Adventure Outdoors*, 552 F.3d at 1301 (recognizing that state courts are "generally presumed competent to interpret and apply federal law"). So, allowing these kinds of cases to remain in state court will not prevent federal law from being interpreted and applied. More important, to hold that garden-variety FLSA issues arising in state minimum wage lawsuits constitute substantial federal questions would potentially federalize every state minimum wage case. That cannot be. *Cf. Adventure Outdoors*, 552 F.3d at 1302 ("Our concern is that by authorizing the exercise of federal jurisdiction here, we would open the doors of the federal courts in this circuit whenever a defamation defendant accuses a plaintiff of violating federal law."). Such a result would flatly contravene the Supreme Court's pronouncements limiting the substantial federal question doctrine to a very narrow category of cases. *See Craddock*, 2011 WL 1601331 at *5 ("[A]llowing *every* claim brought under [West Virginia's Minimum Wage Act] to be removed to federal court would run counter to the Supreme Court's recognition that *Grable* represented a 'slim category' of cases."). Congress has provided a federal remedy for minimum wage claims – the FLSA. The federal courts already hear those claims. Requiring federal courts to also accept every state law minimum wage claim that presents an FLSA issue would unnecessarily increase the workload of already-overburdened federal courts,

thereby upsetting the federal-state judicial balance. The Court cannot imagine that Congress could have intended such a result, particularly given the enormity of the broader implications. For, if a state legislature can effectively create federal court jurisdiction simply by incorporating federal law into a state statute or constitutional provision, how may Congress preserve its role as the sole legislative branch of the federal government?

## IV. CONCLUSION

Based on the foregoing analysis, the Court concludes that it lacks subject matter jurisdiction over these removed cases. Accordingly, it is ORDERED as follows:

1. These cases are REMANDED to the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida.[5]

2. The Clerk of the United States District Court shall close these federal cases.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on May 13, 2014.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties
Clerk of the Circuit Court, Orange County, FL

---

[5] For the benefit of the state court clerk's office, according to the removal notices filed herein, the Litterer case was assigned state court case number 2013-CA-14079-O prior to removal and the Mejias case was assigned state court case number 2013-CC-16647-O.